Judge Hitchcock
delivered the opinion of the court:
Upon the trial of this cause, in the county of Pickaway, it became important to ascertain the upper back corner of Muhlenburg’s survey. In fact, this was the only material question in controversy. On the part of the lessors of the plaintiff, it was insisted that this corner was lost, and they ^sought to establish it by *225 running a line from the lower back corner, which was proven the course called for in the patent, until it should intersect the upper line of the survey extended westwardly. The defendant introduced witnesses to prove the corner at a point between sixty and seventy polos east of the point of intersection. The natural objects called for are four swamp oaks. The witness .called had never seen such a corner. Judge Florence stated, that while acting as the agent for the lessors of the plaintiff, in the year'1816 or 1817, and while attempting to ascertain the back line of Muhlenburg, he saw, at the point contended for by the defendant, a barren oak stump, marked as a corner, and another tree of the same description, marked in the same manner, had been cut down, and was lying nearly against a fence. This stump and tree were in afield, and in possession of a man by the name of Pritchard. Florence, although acting as the agent of the plaintiff, did not examine, particularly, the marks on the stump and tree; his sole object being to fix the back line at a place where there could be no-controversy on account of interfering claims.
In October, 1817, Sylvester. Bourne was surveying in the neighborhood, and was shown a corner, said to be Muhlenburg’s, about fourteen rods'west of Baldwin’s corner’. This is the distance between the corners of Baldwin and Muhlenburg, as claimed by defendant. Kinnear, a surveyor, run the line, and noticed the stump, marked as a corner, at the same point; and the same fact was stated by White, another surveyor, who was on the ground in-1831. White further stated, that the mark corresponded with other marks of the survey, except that they wore not cut through the bark, so as to ascertain the age by blockings.
It was stated that swamp oak and barren oak are the same timber. There was no prbof of any corner west of this, on the north line of the survey extended; but Shepherd, a witness on the part of the plaintiff, stated, that several years since, he found a man by the name of Muir (since deceased), in the woods making rails, who told him that he had chopped down a corner tree, which, at some future time, would make difficulty; and the witness saw a rail with marks similar to those on corner trees. This was near a prairie, *and several rods west of the corner as claimed by the plaintiff, but not at the point of intersection. Nor did it appear, that at, or near the point of intersection, there were any trees marked, although there was timber in the neighborhood of *226 the description called for. It is now mostly dead and destroyed. Upon this evidence the jury returned a verdict for the plaintiff, whereupon the defendant moved for a new trial, assigning for •cause that the verdict was against evidence. The judges who tried the cause, although agreed that the verdict was against the weight of the evidence, yet differed in opinion as to the propriety ■of granting a new trial. Whereupon the counsel for the defendant moved, that, pursuant to the law in such case provided, the ■case should be reserved for decision here.
Motions for new trials are addressed to the discretion of the ■court, and will be granted or refused a3 the justice of the case ■seems to require. As a general rule new trials will be granted ■where the verdict is against the evidence or manifestly against the weight of the evidence. In the case of Curtis and others v. Jackson, 13 Mass. 507, the court say, that if the verdict be clearly against the weight of evidence, justice undoubtedly requires the interposition of the court. The only proof of the existence of a corner established it at the point claimed by the defendant. In fact the plaintiff relied upon the absence of such proof, in order that he might be permitted to establish a corner by running the course called for in his patent to the point of intersection. No principle, however, is better established in Yirginia military surveys than that this course and distance must be controlled by natural objects. It is true that there would be a great variation in the course of Muhlenburg’s back line, if the corner should bo established at the point claimed by the defendant. Still if the corner was here originally fixed, it can not now be changed. It is manifest that the back line was not run at the time of the original survey, and the course was only ascertained by calculation. There is no proof of the four swatnp oaks, but there is proof of two swamp oaks marked as a corner, and it appears that this corner is within a clearing. Further it must be remembered, that this survey was made in 1795, and the corner trees were *not examined until more than twenty years thereafter. Is it surprising, then, that some of the trees should be gone? Those found, however, are of the description called for, and no other corner is found in the same neighborhood, which could answer to the call of Muhlenburg. The testimony of Shepherd is entitled to but little consideration. He states what he had heard from Muir, and further that Muir was a man in the habit of telling *227 large stories. TJpon the whole, the weight of evidence is manifestly against the finding of the jury, and such was the opinion -of the judges who tried the cause. The rule stated would then ■require of the court to award a new trial, and the justice of the case seems to demand it.
It is said, however, that in actions,of ejectment, new trials will not be granted, even where the verdict is not only against the weight of evidence, but where it is against evidence. I am aware that such a principle is laid down in the books.' The reason assigned is that the judgment is no bar. A new action may be brought, merely changing the name of the nominal plaintiff. I apprehend, however, that it will be found upon examination that this principle applies more particularly to cases where there is a verdict for the defendant. In such case the situation of the parties is not changed. The plaintiff can again renew his action and recover upon the same evidence which would have entitled him to a verdict in the first instance. He loses nothing by the first judgment but the costs of suit, and these he would probably have to pay, as a condition of the new trial. Where the verdict is against defendant, the reason of the rule ceases. For how is it with the defendant? If judgment passes against him, the possession is -changed, and although he commence a new action, still he comes before the jury under less favorable circumstances than before. .In ejectment the rule is invariable, that the plaintiff must recover on the strength of his own title, and not upon the weakness of the title of his adversary. If there is any doubt in the case, that doubt must be resolved in favor of the defendant. The defendant being in possession shall not be ousted by a doubtful claim. This being a principle recognized in the action, and it is founded in principles of abstract justice, why shall it be said, that ^defendant can not, after verdict against him,' move for a new trial because the action is ejectment, when the evidence upon which that verdict is founded goes to prove, not merely that the -claim of the plaintiff is doubtful, but that the defendant has, in fact, not only the possession, but also the right of possession ? Under such circumstances, to deny a new trial would seem to be manifestly unjust.
So also that courts are more liberal in .granting new trials in ejectment, where the verdict is against a defendant, than when it *228 is in his favor. I refer to Runnington on Ejectment, 398, and 1 W. Blackstone, 348.
Upon the whole, a majority of the court are of opinion that, in the present case, a new trial be ordered at the cost of the defendant.